THE JESSUP & MOORE PAPER COMPANY

*vs.*

PETER J. FORD, THOMAS FORD, and THOMAS F. RYAN.

New Castle, March T., 1887.

*Pollution of natural stream; injunction.*

1. A riparian owner on a natural stream has a legal right to the flow of the stream, in its accustomed channel and usual volume, and in its accustomed purity, unpolluted by riparian owners above.

2. The authority of a court of equity to restrain the pollution of natural streams, where such pollution will cause irreparable injury and loss to a riparian owner in his accustomed and necessary legal use of the waters thereof, is unquestionable.

3. Where the danger threatened is of such a nature that it cannot easily be remedied in case of a refusal of relief, and the answer does not deny that the act charged is contemplated, an interlocutory injunction will be allowed, unless the equities of the bill are satisfactorily refuted.

4. A preliminary injunction granted—at the suit of a riparian owner operating paper-pulp works on a natural stream, the use of the water of which in an unpolluted condition was necessary to his business and to which he was entitled—to restrain the operation, by an upper riparian owner, of a morocco factory, the operation of which threatened to pollute the waters of the stream and render them unfit for use by others and so work serious injury to the complainant's business.

BILL FOR AN INJUNCTION.—The complainant, a corporation of the State of Delaware, is the owner of a tract of land containing about 64 acres, in Christiana Hundred in New Castle County, at the point where a certain ancient stream of water, called "Mill Creek," empties into the Christiana River, in said county.

The complainant erected on this land extensive and expensive buildings, machinery, and appliances for the

manufacture of wood pulp, used in the manufacture of paper. A large volume of pure and unpolluted water is necessary to be supplied daily for the prosecution of such business.

The bill alleges that in view of the above requirement of the business, complainant selected and purchased the said land on account of its proximity to said Mill Creek and the convenience of obtaining the required water from the same in proper quantity and quality; that the water of said creek, from time immemorial, has been and is sufficiently pure and unpolluted for the complainant's use in its business; and that the complainant has continuously used the water of said creek in the prosecution of its said business, and that it is compelled to rely on the waters of said creek, not only for the proper prosecution of its business, but for the watering of its livestock.

The bill also states that about 10,400 feet above the manufacturing site of the complainant a certain ancient and perennial stream or run or watercourse, known as Chestnut Run or Silver Brook, empties into said Mill Creek; that the defendants are engaged in erecting a morocco factory in immediate proximity to said Silver Brook, about 6,000 feet above its confluence with Mill Creek, from which said proposed factory noxious and offensive matter, or refuse, and impure and foul water, used in connection with the manufacture of morocco, and containing decayed animal matter, blood, lime, tanic acid, mineral poisons, hair and excrement of animals, and the general refuse of a morocco factory, consisting of divers other foul, noxious, offensive, and polluted substances, will be discharged in large quantities, from day to day, into the said stream or run, if the said building be completed and used for the purposes for which it is intended, namely, the manufacturing of morocco. That

such discharges into Silver Brook would necessarily also be discharged into Mill Creek, and render the waters thereof unfit for use in the manufacture of wood pulp, and will destroy the business of the complainant, in the conduct of which 150 men on the average are employed, and render worthless the buildings, machinery, and appliances of the complainant, which have cost, in their erection and construction, upwards of $100,000.

The bill alleges that notice was given to the defendants to abstain from the pollution or spoiling of the waters of said brook and creek, and that complainant should insist on its right to the use of the same in quantity and quality as they then were, by all legal and equitable means; but that notwithstanding the service of said notice the defendants still continue the erection of the proposed factory, and persist in their intention to use it as such.

The bill prays that the defendants may be restrained by injunction from discharging or permitting to be discharged from said proposed factory, directly or indirectly into the waters of said stream or run, any noxious or offensive matter or refuse, or any impure or foul water used in connection with the manufacture of morocco, or containing decayed animal matter, blood, lime, mineral poison, excrement of animals, or any noxious or offensive refuse.

A rule was served upon the defendants to show cause, at the time and place therein stated, why a preliminary injunction should not be awarded as prayed for in the bill.

The hearing of the motion for a preliminary injunction was continued from time to time, until the answer of the defendants had been put in under oath. Similar questions were then raised and discussed by solicitors for the parties respectively, as to the admissibility of affida-

vits in support of the bill and answer to those raised and discussed in the case of Forman against the same defendants, *ante,* p. 47; and the same decision of these questions was made by the Chancellor as in that case.

The answer in this case was in all material respects similar to that made by the same defendants in the case of Forman against them, with the additional statement that the said morocco factory is more than three miles above the pulp works of the complainant, and that the waters of said Silver Brook flowing that distance, and by mingling with the waters of Mill Creek, would become so purified as to render innoxious any matter which might be discharged into the waters of said Silver Brook.

*Victor Dupont, Edward G. Bradford,* and *Willard Saulsbury, Jr.,* for the complainant:

The complainant as a riparian owner on Mill Creek possesses certain well-defined and legal rights in respect to said stream. It has a natural and legal right to the flow of said stream in its accustomed channel and in its usual volume through and along its land. *Carlisle* v. *Cooper,* 6 C. E. Green, 576; *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, 342; High, Inj. §§ 794–796.

It has a right to the use of the water of said stream from its source to its termination. Ang. Watercourses, § 4 *b,* and note 1; 2 Hill. Torts, ed. 1859, pp. 109, 120, 121.

It has a legal right to the flow of said stream in its accustomed purity, unpolluted by riparian owners above; and this right is as well established and clearly defined as the right to the flow of the water itself. Kerr, Inj. *382, § 10; *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, 343; *Attorney-General* v. *Steward,* 5 C. E. Green, 415–419; *Carhart* v. *Auburn Gas Light Co.* 22 Barb. 297; *Clowes* v. *Staffordshire Potteries Water-*

*works Co.* L. R. 8 Ch. App. 125; *Attorney-General* v. *Steward,* 6 C. E. Green, 340; High, Inj. 798; *Silver Spring B. & D. Co.* v. *Wanskuck Co.* 13 R. I. 611.

And the size of the watercourse is immaterial; it may sometimes be dry. Ang. Watercourses, §§ 4, 4 A; *Shields* v. *Arndt,* 3 H. W. Green, 246, 247; *Luther* v. *Winnisimmet Co.* 9 Cush. 171; *Earl* v. *De Hart,* 1 Beas. 280; *Gillett* v. *Johnson,* 30 Conn. 180; *Wheatley* v. *Baugh,* 25 Pa. 529–531; *Arnold* v. *Foot,* 12 Wend. 330.

To so pollute a stream as to render it useless to riparian owners below is practically to destroy the stream and to appropriate their rights. *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335; High, Inj. 798; *Silver Spring B. & D. Co.* v. *Wanskuck Co. supra.*

Riparian rights are property as much as the right to the soil itself, and to pollute the water of a running stream amounts to a devesting and appropriation of the vested rights of riparian owners lower down the stream; and this cannot be legally effected against the will of such owners, unless through the exercise of the right of eminent domain. *Yates* v. *Milwaukee,* 77 U. S. 10 Wall. 497, 19 L. ed. 984; *Gardner* v. *Newburgh,* 2 Johns. Ch. *162; *March* v. *Portsmouth & C. R. Co.* 19 N. H. 372–379; *Useful Manuf. Soc.* v. *Morris Canal & B. Co.* 1 Saxt. 157–187; *Hooker* v. *New Haven & N. Co.* 14 Conn. 146–162; *Burden* v. *Stein,* 27 Ala. 104; *Silver Spring B. & D. Co.* v. *Wanskuck Co. supra;* Mills, Em. Dom. § 190.

But the right of eminent domain cannot be invoked to aid the defendants in this case. They have shown no permit to tap said sewer, and if they had such permit they could not use it as a defense. City Ord. p. 403, § 5.

The city of Wilmington, having no power to take our property without compensation, can of course authorize no one else to take it.

The pollution of a natural stream to the detriment of a riparian owner using the same for lawful purposes, constitutes a nuisance of which he has a right to complain in courts of justice. It gives him a right of action. *Howell* v. *M'Coy*, 3 Rawle, 256–268; *Carhart* v. *Auburn Gas Light Co.* 22 Barb. 297; *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, 342; *Sanderson* v. *Pennsylvania Coal Co.* 86 Pa. 401.

The delicate nature of the manufacture in which the water is used makes no difference. A riparian owner is entitled to the use of the water in its natural state. *Clowes* v. *Staffordshire Potteries Waterworks Co.* L. R. 8 Ch. App. 125; *Carhart* v. *Auburn Gas Light Co.* 22 Barb. 297; *Crossley* v. *Lightowler*, L. R. 3 Eq. Cas. 288; High, Inj. § 798; *Silver Spring B. & D. Co.* v. *Wanskuck Co.* 13 R. I. 611.

Such pollution is, to a riparian owner below, both an injury and damage. *Pennington* v. *Brinsop Hall Coal Co.* L. R. 5 Ch. D. 769; *Webb* v. *Portland Mfg. Co.* 3 Sumn. 189; *Sanderson* v. *Pennsylvania Coal Co.* 86 Pa. 401.

It is immaterial whether the nuisance be public or private; if the complainant suffers special damage. Ang. Watercourses, § 137; *Frink* v. *Lawrence*, 20 Conn. 117.

That the trade or business creating the nuisance is lawful makes no difference. *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335; *Wahle* v. *Reinbach*, 76 Ill. 322; Kerr, Inj. *382, § 10 (*e*), *Carhart* v. *Auburn Gas Light Co.* 22 Barb. 297; *Robinson* v. *Baugh*, 31 Mich. 290; *Crossley* v. *Lightowler*, L. R. 3 Eq. Cas. 279, L. R. 2 Ch. App. 478; *Stockport Waterworks Co.* v. *Potter*, 7 Hurlst. & N. 160; *Attorney-General* v. *Steward*, 6 C. E. Green, 340, 5 C. E. Green, 415–417. And the fouling by many will not excuse the fouling by one. Kerr, Inj. *382, § 10 (*d*); *Crossley* v. *Lightowler*, L. R.

3 Eq. Cas. 279, L. R. 2 Ch. App. 478; *Attorney-General v. Steward,* 5 C. E. Green, 419; *Robinson v. Baugh,* 31 Mich. 290.

It is immaterial by whom the nuisance is created, whether by individuals or by municipal corporations. *Gardner v. Newburgh,* 2 Johns. Ch. 162; *Belknap v. Belknap,* 2 Johns. Ch. 463; *Hughes v. Modern College,* 1 Ves. Sr. 188; High, Inj. § 810; *Baltimore & P. R. Co. v. Fifth Baptist Church,* 108 U. S. 317, 27 L. ed. 739; *Goldschmid v. Tunbridge Wells. Imp. Comrs.* L. R. 1 Ch. App. 349; *Attorney-General v. Birmingham T. & R. D. Board,* L. R. 17 Ch. D. 685.

The growing density of population, the making of public improvements, or the establishment of great trading concerns, will not justify the creation or continuance of such a nuisance. *Holsman v. Boiling Spring Bleaching Co.* 1 McCart. 335; *Gardner v. Newburgh,* 3 Johns. Ch. 162; Wood, Nuis. Bradf. ed. § 434; Story, Eq. Jur. § 925 (*a*), note 5.

A private party may have relief in equity where the injury results from public nuisance. *Pennsylvania v. Wheeling & B. Bridge Co.* 54 U. S. 13 How. 518, 563–567, 14 L. ed. 249; *Georgetown v. Alexandria Canal Co.* 37 U. S. 12 Pet. 91, 98, 9 L. ed. 1012; *Corning v. Lowerre,* 6 Johns. Ch. 439; *Sampson v. Smith,* 8 Sim. 272; *Spencer v. London & B. R. Co.* 8 Sim. 193; 2 Story, Eq. Jur. § 924 (*a*); *Soltau v. DeHeld,* 9 Eng. L. & Eq. 104; *Attorney-General v. Forbes,* 2 Mylne & C. 123–130; Kerr, Inj. *334, § 4, note 1.

He is also entitled to equitable relief against a private nuisance. 2 Story, Eq. Jur. §§ 925–928; *Catlin v. Valentine,* 9 Paige, 575; *Mohawk & H. R. R. Co. v. Artcher,* 6 Paige, 83; *Belknap v. Belknap,* 2 Johns. Ch. 463; Ang. Watercourses, § 444; *Baltimore & P. R. Co. v. Fifth Baptist Church,* 108 U. S. 317, 27 L. ed. 739;

*Crossley* v. *Lightowler*, L. R. 3 Eq. Cas. 279, L. R. 2 Ch. App. Cas. 478.

A court of equity will, by the summary remedy of injunction, prevent or stop such pollution. The foundation for the exercise of its jurisdiction is that the injury will be irreparable, or the remedy at law would be insufficient or productive only of interminable and vexatious litigation. *Carlisle* v. *Cooper*, 6 C. E. Green, 576, 589; *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335–342; *Shimer* v. *Morris C. & B. Co.* 11 C. E. Green, 364; *Shields* v. *Arndt*, 3 H. W. Green, 234; *Arthur* v. *Case*, 1 Paige, 447; *Webb* v. *Portland Mfg. Co.* 3 Sumn. 189; *Crossley* v. *Lightowler*, *supra; Clowes* v. *Staffordshire Potteries Waterworks Co.* L. R. 8 Ch. App. Cas. 143; *Attorney-General* v. *Colney Hatch Lunatic Asylum*, L. R. 4 Ch. App. Cas. 147; *Burden* v. *Stein*, 27 Ala. 194; *Lockwood Co.* v. *Lawrence*, 77 Me. 297; *Silver Spring B. & D. Co.* v. *Wanskuck Co.* 13 R. I. 611.

There is no means of estimating the damage to a riparian owner by polluting a stream. He may hereafter desire to put it to some other use which the pollution would prevent. *Pennington* v. *Brinsop Hall Coal Co.* L. R. 5 Ch. D. 769.

Such continued pollution might ripen into a right. Therefore a party may protect his right by injunction though there be no actual damage. *Webb* v. *Portland Mfg. Co.* 3 Sumn. 189; *Crossley* v. *Lightowler*, L. R. 3 Eq. Cas. 277, L. R. 2 Ch. App. 478.

The injury threatened is irreparable, in the proper sense of that term. Wood, Nuis. § 778; *Wahle* v. *Reinbach*, 76 Ill. 322; *Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, 343; *Fulton* v. *Greacen*, 36 N. J. Eq. 216; *Lockwood Co.* v. *Lawrence*, 77 Me. 207.

Courts of equity will proceed with the cause in the first instance, especially where the complainant's rights are

clear, and will not compel him to first establish his rights
at law. *Attorney-General* v. *Steward,* 5 C. E. Green, 415,
6 C. E. Green, 340; *Carlisle* v. *Cooper,* 6 C. E. Green, 576;
*Babcock* v. *New Jersey Stock Yard Co.* 5 C. E. Green,
296; *Holsman* v. *Boiling Spring Bleaching Co.* 1 Mc-
Cart. 335; *Shimer* v. *Morris C. & B. Co.* 27 N. J. Eq.
364; *Arthur* v. *Case,* 1 Paige, 447; *Olmsted* v. *Loomis,*
9 N. Y. 423, favorably overruling same case below, 6
Barb. 154, and also *Fisk* v. *Wilber,* 7 Barb. 395; *Belknap*
v. *Belknap,* 2 Johns. Ch. 463; *Hughes* v. *Modern Col-
lege,* 1 Ves. Sr. 188; *Goldschmid* v. *Tunbridge Wells*
*Imp. Comrs.* L. R. 1 Ch. App. 349; *Gardner* v. *New-
burgh,* 2 Johns. Ch. 162; *Bush* v. *Western,* Finch, Prec.
530; *Attorney-General* v. *Doughty,* 2 Ves. Sr. 453;
*Whalley* v. *Whalley,* 3 Bligh, 16; *Tatem* v. *Gilpin,* 1
Del. Ch. 13; *Catlin* v. *Valentine,* 9 Paige, 575; *Burden*
v. *Stein,* 27 Ala. 104.

The mere denial of complainant's right, by the answer,
will not oust the court of its jurisdiction, especially where
the complainant has long used his rights; and where the
complainant claims the protection of the court for the
enjoyment of a natural watercourse, his rights will usu-
ally be regarded as clear. *Carlisle* v. *Cooper,* 6 C. E.
Green, 576–580; *Holsman* v. *Boiling Spring Bleaching
Co.* 1 McCart. 335, 343, 344; *Shields* v. *Arndt,* 4 N. J.
Eq. 234.

But in this case the right of complainant as a riparian
owner is admitted by the answer. The only question to
be considered in this case is, What will be the result of
the act complained of and threatened ? It is only for the
court to be satisfied, from the facts, of the propriety of
granting the injunction. *Pennsylvania* v. *Wheeling &
B. Bridge Co.* 54 U. S. 13 How. 568, 14 L. ed. 249;
*Mohawk & H. R. R. Co.* v. *Artcher,* 6 Paige, 83; *Earl*
v. *De Hart,* 12 N. J. Eq. 280; *Wahle* v. *Reinbach,* 76 Ill.
322; *Miller* v. *Wack,* 1 Saxt. 204.

A preliminary or interlocutory injunction will be granted upon less positive proof than would be required at the final hearing to obtain a perpetual injunction. *United States* v. *Duluth*, 1 Dill. 469; High, Inj. §§ 4, 5; *Ross* v. *Butler*, 19 N. J. Eq. 307; *Kersey* v. *Rash*, 3 Del. Ch. 321, 326.

The power of awarding an issue should be sparingly exercised by courts of equity, and is entirely discretionary. *Carlisle* v. *Cooper*, 6 C. E. Green, 576–589; *Dale* v. *Roosevelt*, 6 Johns. Ch. 255; *LeGuen* v. *Gouverneur*, 1 Johns. Cas. 436, 500, 506, 507, 520.

Courts of equity will, by injunction, prevent the commission of threatened injury and nuisances, and will not wait until the wrong is actually done. *Catlin* v. *Valentine*, 9 Paige, 575; *Wahle* v. *Reinbach*, 76 Ill. 322; 3 Pom. Eq. Jur. §§ 1350, 1351; *Ross* v. *Butler*, 19 N. J. Eq. 294; *Attorney-General* v. *Steward*, 5 C. E. Green, 415, 6 C. E. Green, 340; *St. Louis* v. *Knapp Co.* 104 U. S. 658, 26 L. ed. 833; *Coker* v. *Birge*, 9 Ga. 425; *Lyon* v. *McLaughlin*, 32 Vt. 423; *Crisman* v. *Heiderer*, 5 Colo. 589, 594; *Cleveland* v. *Citizens Gas Light Co.* 5 C. E. Green, 201; *Belknap* v. *Belknap*, 2 Johns. Ch. 463; *Arthur* v. *Case*, 1 Paige, 447; *Kates* v. *Jack*, L. R. 1 Ch. App. Cas. 295; Kerr, Inj. 339, 340, § 13, notes; *Attorney-General* v. *Doughty*, 2 Ves. Sr. 453; *Useful Manuf. Soc.* v. *Morris C. & B. Co.* 1 Saxt. 192; *Shields* v. *Arndt*, 4 N. J. Eq. 245; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; *Frink* v. *Lawrence*, 20 Conn. 117; *Fulton* v. *Greacen*, 9 Stew. 216.

It lies wholly in the discretion of the court whether to grant or refuse or dissolve a preliminary injunction; and an injunction will not be dissolved as of course upon the coming in of the answer. Kerr, Inj. *634, § 4, note R; *Kersey* v. *Rash*, 3 Del. Ch. 321, 326; *Poor* v. *Carleton*, 3 Sumn. 70; Wood, Nuis. § 817; *Roberts* v. *Anderson*, 2

Johns. Ch. 202; *Purnell* v. *Daniel,* 8 Ired. Eq. 9; *Firm-stone* v. *DeCamp,* 17 N. J. Eq. 309–316; *Irick* v. *Black,* Id. 189, 200; *Fleischman* v. *Young,* 9 N. J. Eq. 620; *Stotesbury* v. *Vail,* 13 N. J. Eq. 390, 394; *Blossom* v. *Van Amringe,* Phill. Eq. 133; *Parker* v. *Grammer,* Id. 28; *McBrayer* v. *Hardin,* 7 Ired. Eq. 1; *Johnson* v. *Allen,* 35 Ga. 252; *Edwards* v. *Banksmith,* Id. 213; *White* v. *Nunan,* 60 Cal. 406.

The long distance between complainant's and defendants' works is immaterial, if the complainant suffer injury. Wood, Nuis. § 436; Story, Eq. Jur. § 925 A, note 5; *Attorney-General* v. *Birmingham,* 4 Kay & J. 528; *Stockport Waterworks Co.* v. *Potter,* 7 Hurlst. & N. 160; *Sanderson* v. *Pennsylvania Coal Co.* 86 Pa. 401.

The completion of defendants' factory, since notice to refrain, cannot avail defendants. *Pennsylvania* v. *Wheeling & B. Bridge Co.* 54 U. S. 13 How. 563, 578, 14 L. ed. 270.

In this case complainant can, on strong grounds, claim the protective power of this court. Notice was given defendants to refrain (*Holsman* v. *Boiling Spring Bleaching Co.* 1 McCart. 335, 348); and objection made to the erection of the works. High, Inj. § 797.

The alleged intention of defendants, by appliances or devices, to prevent the threatened nuisance, is no answer to the application for an injunction, in that the nature or kind of appliances or devices has not been set out; and the court is thus deprived of all means of forming an intelligent judgment upon this subject. Such statement is therefore entitled to no weight. Wood, Nuis. 823.

Preventive remedies taken by the defendants since filing of the bill will not avail to hinder the decreeing of perfect relief. *Carlisle* v. *Cooper,* 6 C. E. Green, 576, 592.

The financial responsibility of defendants can have

nothing to do with the case. The threatened injuries cannot be adequately compensated in damages. Should there be a doubt in the chancellor's mind, an injunction in such a case should be continued if already granted, or, by parity of reasoning, granted upon application. *Purnell* v. *Daniel*, 8 Ired. Eq. 9.

Especially is this true in this State, where injunction bonds are required, and any expense incurred by defendants is thereby secured to them. *Kersey* v. *Rash*, 3 Del. Ch. 321–326.

Where an injunction, if granted, can do no harm to the defendants, and may prevent irreparable injury to the complainant, the court will grant or continue a preliminary injunction. *McBrayer* v. *Hardin*, 7 Ired. Eq. 1.

*William C. Spruance*, with *George Gray*, for the defendants:

We find no reported case in Delaware in which a nuisance, public or private, has been restrained by injunction.

The case of *Tatem* v. *Gilpin*, 1 Del. Ch. 13, was a case amounting to waste, by damming and setting back water, and not a mere nuisance.

The writ was refused in the following cases, in which the chancellor laid down rigid rules in cases of nuisance: *Harlan & H. Co.* v. *Paschall*, 5 Del. Ch. 435; *Gray* v. *Baynard*, 5 Del. Ch. 499. See also *Philadelphia's Appeal*, 78 Pa. 33; 2 Story, Eq. § 959 (*b*), note 1.

If the fact of nuisance be doubtful, an information will not be granted until the nuisance be established at law. 2 Story, Eq. §§ 923, 924 (*a*).

A court of chancery will not interfere to prevent a private nuisance, unless it has been erected to the annoyance of the right of another long previously enjoyed

It must be a case of strong and imperious necessity, or the right previously established at law, before a party is entitled to injunction. *Van Bergen* v. *Van Bergen*, 3 Johns. Ch. 282, 283, 287, 288.

An injunction to restrain defendants from discharging foul, noxious, or impure matter into a stream is refused, even when the plaintiff had established his right at law by the recovery of nominal damages, in a case where the fouling of the water was not so serious and continuous as to seriously obstruct the plaintiff's manufacture—where damages would compensate—where the injunction would seriously injure the defendants. *Wood* v. *Sutcliffe*, 2 Sim. N. S. 163.

It is not every case, even of a clear violation of the plaintiff's right, that entitles him to an injunction. It is not every case in which there is a right of action for a nuisance that will justify the interposition of courts of equity. The injury must be such as from its nature is not susceptible of being adequately compensated by damages at law, etc.

A mere diminution of the value of property by the nuisance, without irreparable mischief, will not be any foundation for equitable relief. 2 Story, Eq. Jur. § 925; *Bruce* v. *Delaware & H. Canal Co.* 19 Barb. 371–379; *Eastman* v. *Amoskeag Mfg. Co.* 47 N. H. 71; *Fort* v. *Groves*, 29 Md. 188, 192–194.

Irreparable injury is such injury as is likely to be so great as to be incapable of compensation in damages. *Rhodes* v. *Dunbar*, 57 Pa. 286.

Where damages will compensate, an injunction will not be granted. *Richard's Appeal*, 57 Pa. 105, 110–114.

The injury to warrant an injunction must be substantial and material, and not slight, and without serious damage. *Rhodes* v. *Dunbar*, 57 Pa. 287.

The statement in the bill that irreparable injury will

be done is to be regarded only as the expression of the plaintiff's view; but the court is not precluded from looking into the facts alleged, for the purpose of determining whether this is true. *Coe* v. *Winnepisiogee Lake, C. & W. Mfg. Co.* 37 N. H. 254, 263, 264; *Amelung* v. *Seekamp*, 9 Gill & J. 468; *Fort* v. *Groves*, 29 Md. 193.

A preliminary injunction will be dissolved if it appears to the court that its dissolution will not lead to irreparable injury, or cause loss to the plaintiff, which cannot be repaired in damages. *Wing* v. *Fairhaven*, 8 Cush. 363, 364.

Regard should be had to the consequences to the defendants if the injunction should be granted, as well as the consequences to the plaintiff if it is denied. *Bruce* v. *Delaware & H. Canal Co.* 19 Barb. 379; *Wing* v. *Fairhaven*, 8 Cush. 363, and also the Illinois and Pennsylvania cases cited on the other points.

The erection and operation of said morocco factory are not *per se* nuisances. It is a lawful and useful enterprise, and should be encouraged, and not hindered. The apprehended injuries complained of, even if possible under some circumstances, are not the necessary and inevitable result of its operation. From the nature of the case it cannot now, by any amount of testimony, be proved that its operation will result in the injury complained of.

Even if the operation of the factory would necessarily result in the discharge into Silver Brook of the fluids or substances mentioned in the bill, it may be that the quantity would be so small as not to result in serious or material injury to the waters of Mill Creek at the point where the same is used by the complainant.

If the thing sought to be prohibited is not unavoidably and in itself noxious and injurious,—that is *per se* a nuisance,—but only something which may according to

circumstances prove to be so, the court will refuse to in-
terfere by injunction until the matter has been tried at
law by an action. High, Inj. § 488; *Ripon* v. *Hobart,*
3 Myl. & K. 169, Coop. Sel. Cas. 343, *Lord* Brougham;
*Kirkman* v. *Handy*, 11 Humph. 406; *Simpson* v. *Jus-
tice*, 8 Ired. Eq. 115; *Laughlin* v. *Lamasco City*, 6 Ind.
221, 227–229; *Thebaut* v. *Canova*, 11 Fla. 143; *Mohawk
Bridge Co.* v. *Utica & S. R. Co.* 6 Paige, 554, 555,
563–565; *Dunning* v. *Aurora*, 40 Ill. 481, 485–487; *Lake
View* v. *Letz*, 44 Ill. 81–85; *Butler* v. *Rogers*, 9 N.
J. Eq. 487–489; *Rhodes* v. *Dunbar*, 57 Pa. 274–
291; Wood, Nuis. § 789; Kerr, Inj. p. 340, § 13; *Wood*
v. *Sutcliffe*, 2 Sim. N. S. 163; *Haines* v. *Taylor*, 2 Phill.
209; *Bruce* v. *Delaware & H. Canal Co.* 19 Barb. 371.

Where an injunction is asked to restrain the construc-
tion and operation of works of such a nature that it is
impossible for the court to know, until they are completed
and in operation, whether they will or will not consti-
tute a nuisance, the writ will be refused and the motion
for injunction will be discharged, and not allowed to
stand over until the works are so in operation that their
character may be determined. High, Inj. § 489; *Haines*
v. *Taylor*, 2 Phill. 209.

Where water is fouled by many persons besides the
defendant, it is incumbent on the complainant to distin-
guish between the injury produced by the defendant and
that produced by others; and it is also incumbent on him
to show that the irreparable injury complained of has
been, or will inevitably be, produced by the defendant.

One who selects as his place of residence or business a
large city, or the suburbs of a large city,—as in this case,
—"tacitly undertakes to suffer such annoyances or incon-
veniences as are incidental to that kind of community."
*Rhodes* v. *Dunbar*, 57 Pa. 287, 288; *Richard's Appeal,*
Id. 105.

There must be no misrepresentation or concealment of important facts ; and if the plaintiff keeps in the background material facts which are important to enable the court to form its judgment, such conduct is of itself sufficient to prevent the interposition of the court. 1 High, Inj. p. 10, § 11.

In the only two cases cited by the complainant in which the distance was great between the point of discharge and the point of injury,—7 Hurlst. & N. 160, and 2 Story, Eq. Jur. note (*a*),—the fact of the discharge and the fact of corruption were proved. In neither of these cases was there any occasion for speculation as to the possible result; the result was proved as a fact.

No case can be found in which, when the distance was as great as in this case and the discharge was of similar amount and kind, an injunction was granted until the fact of injury to the complainant was proved or admitted.

As to *United States* v. *Duluth*, 1 Dill. 469, it appears that the works of the defendant had been partially erected in a navigable river, but sufficient time had not elapsed to enable the court to determine as to the effects they would produce, the opinion of the witnesses as to the probable result being conflicting, preliminary injunction was granted ; but as the works had been partially erected, and would so remain, their effect could be ascertained at a final hearing.

But in the present case, if all discharges into Silver Brook be prohibited by preliminary injunction, at a final hearing the court will have no additional facts on which to determine the effect on the water of Mill Creek, and at the first hearing the court would have to decide on speculation.

The Chancellor.—It appears from the affidavits filed in the cause that the defendants have erected, and since

the filing of this bill have begun to operate, an extensive morocco manufactory at Second and Webb streets, in the city of Wilmington, on the banks of a small stream called Silver Brook, which from that point flows a distance of about 6100 feet until it empties into Mill Creek. Mill Creek, from the point where Silver Brook empties into it, flows a distance of about 10,400 feet, until it empties into the Christiana River, at said mills of the complainant.

The complainant contends that the discoloration of the waters of Mill Creek, and also the dye stuffs and impure substances contained in the refuse matter discharged from said factory, will render the water of said Mill Creek totally unfit for use in the complainant's pulp works; that the lime and lime-water would kill the "bleach," a part of the process in manufacturing wood pulp, by neutralizing the chlorine; and that loose hair passing down said stream would mingle with the paper pulp and paper, and render it unsalable; and that the necessary result of the operation of the morocco factory by the defendants, and the discharge into said stream of the said refuse matter, will be the stoppage of the said pulp works, thus depriving the other mills of the complainant of their supply, from the said pulp works, of the material necessary for the manufacture of paper, causing it loss of trade and great and irreparable damage.

I have given careful attention to the contents of the affidavits filed in support both of the bill and answer; and while giving due credit to all the witnesses, both of the complainant and the defendants, the best judgment which I am able to form in respect to their statements is that the discharge of the refuse matter from said morocco factory in the said Silver Brook, the waters of which would necessarily flow into and mingle with the waters of Mill Creek, would be perilous to the business

of the complainant, as set forth and described in its bill
of complaint.    Since the defendants have commenced
operating their factory, they seem to have run the refuse
and polluted waters into ponds dammed off near their
factory and adjoining Silver Brook.

These ponds have several times broken the dams, and
the contents thereof have been discharged into Silver
Brook, the water of which has been blackened and dis-
colored all the way from said factory to Mill Creek, and
also the waters of Mill Creek have been blackened and
polluted for a considerable distance below said factory.
The small fish in said Silver Brook have been killed by
the pollution of the waters thereof; the water has been
made unfit for the use of cattle for days after such dis-
charge; the bottom of the stream has been blackened by
sediment, and black scum in some places has covered the
water; this discoloration of the water extended a consid-
erable way into Mill Creek.

The superintendent and assistant superintendent of the
pulp works swear that the waters at Mill Creek have not
been so pure as usual, and larger quantities of bleaching
matter have had to be used to counteract the effect of
the pollution caused by a few discharges of this morocco
refuse; they say that they cannot account for this change
in the water in any other way.

Without attempting a reference to all the statements
contained in the affidavits in support of the bill and an-
swer,—for a great many affidavits have been put in,—it
is sufficient to say that, in my judgment, it is reasonable
to believe that the continued discharges of the refuse
matter from said factory into Silver Brook, and thence
into Mill Creek, will work serious injury and damage to
the business of the complainant, and all others who are
compelled to rely on the waters of Silver Brook and Mill
Creek for a proper supply of pure and unpolluted
waters.

The damage to the owners and proprietors of land on Silver Brook sufficiently appears by the affidavits read on the hearing of this rule ; and in addition to the testimony of numbers as to the consequences of the pollution of the waters of Mill Creek to the business operations of the complainant at its mills is the positive testimony of the superintendent and assistant superintendent before referred to.

This case appears to be one which calls for the interposition of this court by way of preliminary injunction.

Where a complainant shows a reasonable and well-founded apprehension of immediate threatened and irreparable injury and loss, it is a duty of courts of equity, in cases within their jurisdiction, to restrain the commission of such injury and infliction of such loss.

I shall not attempt to discuss all the questions raised by the respective parties to this cause in the arguments of their respective solicitors, nor shall I notice in detail in this opinion the many authorities cited in their arguments, which arguments were learned and elaborate. I have, however, carefully considered these authorities and weighed the arguments of the solicitors. I shall content myself, however, with stating a few propositions well established by authority, and which admit of no reasonable doubt.

The complainant has a legal right to the flow of water of said Mill Creek in its accustomed channel and in its usual volume. It has a legal right to the flow of said stream in its accustomed purity, unpolluted by riparian owners above.

To so pollute a stream as to render it useless to riparian owners below is practically, as to them, to destroy the stream, and to destroy their rights therein, as riparian owners.

The authority of a court of equity to restrain the pol-

lution of natural streams of water, where such pollution will cause irreparable injury and loss to a riparian owner in his accustomed and necessary legal use of the waters thereof, is unquestionable and established by numerous authorities, some of which have been cited in arguments in this cause.

Where the danger threatened is of such a nature that it cannot easily be remedied in case of a refusal of relief, and the answer does not deny that the act charged is contemplated, an interlocutory injunction will be allowed, unless the equities of the bill are satisfactorily refuted by the defendant.    *United States* v. *Duluth*, 1 Dill. 469.

It seems in that case that numerous affidavits of engineers and others were offered on both sides as to the effect of the work sought to be enjoined; the opinions expressed being quite conflicting.    The court, Miller, *J.*, said : "The affidavits on both sides are numerous.    They demonstrate what all courts and juries have so often felt, that where the question is one of opinion, and not of fact, though that opinion should be founded on scientific principles or professional skill, the inquiry is painfully unsatisfactory, and the answers strangely contradictory. In this emergency I am relieved by a principle which has generally governed me, and which, I believe, governs nearly all judges in applications for preliminary injunctions.    It is that when the danger or injury threatened is of a character which cannot be easily remedied if the injunction is refused, and there is no denial that the act charged is contemplated, the temporary injunction should be granted, unless the case made by the bill is satisfactorily refuted."

A preliminary injunction is awarded, as prayed in the bill.